**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| **PATRICK ANDRE TAYLOR II  & TITUS WILEY, on behalf of themselves and of all others similarly situated,** | § § § | |
| | § | |
| **Plaintiffs,** | § | **CIVIL ACTION NO. 4:22-CV-250** |
| **v.** | § | |
| | § | |
| **DELTA COUNTY, FORMER SHERIFF RICKY SMITH, CHARLA SINGLETON, COUNTY ATTORNEY JAY GARRETT, COUNTY JUDGE JASON MURRAY, and ZACH WILLIAMSON,** | § § § § § § | **JURY TRIAL DEMANDED** |
| | § | |
| **Defendants.** | § | |
| | § | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Patrick Andre Taylor II and Titus Wiley ("Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, brings this action for damages and other legal and equitable relief from Defendants DELTA COUNTY, FORMER SHERIFF RICKY SMITH, SHERIFF CHARLA SINGLETON, COUNTY ATTORNEY JAY GARRETT, COUNTY JUDGE JASON MURRAY, and ZACH WILLIAMSON (collectively "Defendants"), for violations of their rights under the United States Constitution, including protections against unreasonable searches and seizures under the Fourth Amendment in violation of 42 U.S.C.A. § 1983, protections against unlawful arrests under the Fourth Amendment in violation of 42 U.S.C.A. § 1983, protections against false arrests under the Fourth Amendment in violation of 42 U.S.C.A. § 1983, protections against malicious prosecution under the Fourth Amendment in violation of 42 U.S.C.A. § 1983, protections against false imprisonment under the Fourteenth

**FIRST AMENDED COMPLAINT**

1

Amendment in violation of 42 U.S.C.A. § 1983, denial of basic human needs under the Eighth Amendment in violation of U.S.C.A § 1983, conspiracy to violate rights protected under 42 U.S.C.A. § 1983, abuse of process, malicious prosecution, fraud, intentional infliction of emotional distress, and any other cause(s) of action that can be inferred from the facts set forth herein.

## <u>INTRODUCTION</u>

1.      On or around September 2019, under the supervision of Defendant Sheriff Ricky Smith, Defendant Zach Williamson was hired, trained, and empowered to become a Delta County Sheriff's Deputy. At that time, Defendant Williamson did not possess a valid Peace Officer's License, and had no lawful authority to conduct arrests, stops, or issue citations as a Sheriff's Deputy.

2.      However, each of the above Defendants empowered and allowed Defendant Williamson to operate as a Sheriff's Deputy without a valid license. Defendant Williamson proceeded to conduct numerous unlawful traffic stops, issued unlawful citations, and commit unlawful arrests. Two of the arrests were of the named Plaintiffs.

3.      On or around October 8, 2019, Defendant Williamson conducted an unlawful search of Mr. Wiley's vehicle, and unlawfully arrested Mr. Wiley while he attended his son's peewee football practice.

4.      On or around October 18, 2019, Defendant Williamson drove up to Mr. Taylor's home in Delta County, assaulted Mr. Taylor, and unlawfully arrested him.

5.      During the unlawful arrests of the named Plaintiffs, Defendant Sheriff Smith was aware that Defendant Williamson was operating as a Deputy Sheriff without a valid Peace Officer's license.

**FIRST AMENDED COMPLAINT**

6.      Defendant Smith then conspired with Defendant County Attorney Jay Garrett, Defendant Singleton, and Defendant County Judge Jason Murray to avoid dismissing the unlawful charges and citations against Plaintiffs and those similarly situated, to continue the prosecution of Plaintiffs and those similarly situated without probable cause, and to avoid the release of Plaintiffs and those similarly situated from custody.

7.      Defendant Sheriff Smith, in concert with Defendant County Attorney Garrett, Defendant Singleton, and Defendant Judge Murray, covered up the hiring of Defendant Williamson by altering his employment records with Delta County as well as altering the Delta County Sheriff's Department's official submissions to Texas Commission on Law Enforcement ("TCOLE").

8.      As a result of Defendants' unlawful actions, Plaintiffs and those similarly situated are entitled to recover for damages pursuant to deprivation of rights under the United States Constitution in violation of 42 U.S.C.A. § 1983 including protections against unreasonable searches and seizures under the Fourth Amendments, protections against malicious prosecution under the Fourth Amendment, protections against false arrests under the Fourth Amendment, protections against false imprisonment under the Fourteenth Amendment, protections against denial of basic human needs under the Eighth Amendment, civil conspiracy under 42 U.S.C.A. § 1983; unlawful official hiring policies that were the moving factor behind the deprivation of constitutional rights under 42 U.S.C.A. § 1983; abuse of process; malicious prosecution; fraud; and intentional infliction of emotional duress.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States,

**FIRST AMENDED COMPLAINT**

and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; and (iii) 42 U.S.C.A. § 1983.

10.    The Court's supplemental jurisdiction is invoked by 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

11.    Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

## PARTIES

12.    Patrick Andre Taylor II is and has been, at all relevant times, a citizen of the United States of America and is a resident of the State of Texas.

13.    Titus Wiley is and has been, at all relevant times, a citizen of the United States of America and is a resident of the State of Texas.

14.    Delta County is a local governing body within Texas that operates the Delta County Sheriff's Office and is within the Eastern District of Texas. Delta County Sheriff's Office is a local law enforcement body in Delta County, Texas; and establishes, operates, and supervises all final official policies regarding law enforcement operations within Delta County, Texas, on behalf Defendant County. Delta County Sheriff's Office, on behalf of Defendant Delta County, is responsible for the implementation of its budget, policies, employment, procedures, practices, and

**FIRST AMENDED COMPLAINT**

4

customs, as well as the acts and omissions of its law enforcement officers based on these policies and the training of each officer within all law enforcement operations.

15.    Former Sheriff Ricky Smith was an elected official and was the head of the Delta County Sheriff's Office during the relevant times on behalf of Defendant Delta County. Defendant Smith is sued in his individual capacity and in his official capacity as Former Sheriff of the Delta County Sheriff's Department for compensatory and punitive damages. At all relevant times, Defendant Smith was acting under the color of law as the Delta County Sheriff and the former official final policymaker for law enforcement on behalf of Defendant Delta County.

16.    Charla Singleton is an elected official and is the current head of the Delta County Sheriff's Office on behalf of Defendant Delta County. Defendant Singleton was the Chief Deputy of the Delta County Sheriff's Office during the relevant times, and is sued in her official and individual capacity for compensatory and punitive damages. At all relevant times, Defendant Singleton was acting under the color of law as the Chief Deputy of the Delta County Sheriff's Office. Defendant Singleton is the current final policymaker for law enforcement on behalf of Delta County.

17.    County Attorney Jay Garrett is an elected official with an office located within the Eastern District of Texas. Defendant Garrett is sued in his individual and official capacity as the County Attorney for Delta County for compensatory and punitive damages. At all relevant times, Defendant Garrett was acting under the color of law as the Delta County Attorney.

18.    County Judge Jason Murray is an elected official with an office located within the Eastern District of Texas. Defendant Murray is sued in his individual and official capacity as the County Judge for Delta County for compensatory and punitive damages. At all relevant times, Defendant Murray was acting under the color of law as the Delta County Judge.

**FIRST AMENDED COMPLAINT**

19.    Zach Williamson was a Deputy with the Delta County Sheriff's Department and is sued in his individual capacity as a Former Deputy of the Delta County Sheriff's Department for compensatory and punitive damages. At all relevant times, Williamson was employed by the Delta County Sheriff' Office and was a willful participant acting in concert with the other Defendants and the Delta County Sheriff's Office to illegally purport to act under the color of law as a Delta County Sheriff's Office Deputy.

## STATEMENT OF FACTS

### A.  Defendant Williamson's Employment History

20.    On September 12, 2002, Zach Williamson was granted a Texas Peace Officer's License. This license is required to be lawfully employed as a Peace Officer under the Texas Administrative Code; a law enforcement agency that employs an unlicensed Peace Officer may be fined at least $1,000 per day.[1]

21.    Between 2002 and 2019, Defendant Williamson worked at eight different departments across Texas as a member of law enforcement and had a history of jumping between law enforcement entities for short stints.

22.    During this time, in or around March 2013, Defendant Williamson was employed by the Red River County Sheriff's Office in Red River County, Texas. While operating as a Red River County Sheriff's Deputy, Defendant Williamson conducted an unlawful arrest based on an invalid arrest warrant and deprived constitutional rights. In another incident, Defendant Williamson deployed a patrol rifle in a dangerous manner that the Red River County Sheriff said put people's lives at risk.

---

[1] *See* TEXAS ADMIN. CODE TITLE 37 § 223.2(c)(1).

**FIRST AMENDED COMPLAINT**

6

23.     Subsequently, in or around April 2018, Defendant Williamson was employed by the Honey Grove Police Department in Honey Grove, Texas. While operating as a Honey Grove Police Officer, Defendant Williamson shot a Black man, John Earl Mackey, in his driveway after attempting a traffic stop.

24.     Upon information and belief, Defendant Williamson told Mr. Mackey to exit his vehicle, held up his taser, and asked Mr. Mackey if he knew what being tased felt like. Defendant Williamson then violently assaulted and tased Mr. Mackey. After a subsequent struggle, Defendant Williamson shot Mr. Mackey. In addition, Defendant Williamson was witnessed calling Mr. Mackey "nigger" multiple times before he fired his gun at Mr. Mackey.

25.     Mr. Mackey was subsequently charged with aggravated assault, but all charges were dropped. Mr. Mackey then filed suit against Defendant Williamson and the City of Honey Grove in the Eastern District of Texas – Sherman Division based on these events. The parties subsequently settled the matter while Defendant Williamson resigned as a Honey Grove Police Officer. At the time of Defendant Williamson's resignation, his employment file was marked ineligible for rehire.

26.     Following these events, Defendant Williamson was discharged from the Clarksville Police Department on or around August 5, 2019.

27.     On or around September 1, 2019, Defendant Williamson became out of compliance with State-mandated training, and thus did not possess the minimum standards for initial licensure. As a result, Defendant Williamson's Peace Officer license became inactive and expired.

**B.  Defendant Delta County's Unlawful Employment of Defendant Williamson**

**FIRST AMENDED COMPLAINT**

28.    In or around September 2019, the Delta County Sheriff's Office, on behalf of Defendant Delta County and on the direction of Defendant Smith, considered employing Defendant Williamson as a Deputy with the Delta County Sheriff's Office.

29.    During this time, Defendant Smith approved the hire of Defendant Williamson, despite actual knowledge or notice of  Defendant Williamson's

      (i)     Invalid Peace Officer License,

      (ii)    Failure to possess the minimum standards for Peace Office licensure, and

      (iii)   History of constitutional violations.

30.    Upon information and belief, Defendant Smith approved the hire of Defendant Williamson despite the known consequences that his hiring decision would lead to Defendant Williamson operating unlawfully as a Delta County Sheriff's Deputy and would lead to the likely consequence that Defendant Williamson would violate the constitutional rights of the public.

31.    On October 2, 2019, in order to officially employ Defendant Williamson, the Delta County Sheriff's Office falsely certified on a notarized State of Texas document that it possessed the appropriate documentation to show that Defendant Williamson was licensed as a Peace Officer.

32.    Defendant Williamson further falsely signed that he possessed the minimum standards for immediate reinstatement of his Peace Office License under penalty of perjury on a notarized State of Texas document.

33.    On the same day, under the supervision and oversight of Defendant Smith and the certification of the Delta County Sheriff's Office, Defendant Williamson was officially sworn as a Delta County Sheriff's Deputy. Defendant Williamson specifically certified his Oath of Office in the name of and by the authority of the State of Texas, despite not possessing the necessary license to lawfully execute the duties of the office.

**FIRST AMENDED COMPLAINT**

34.    Later that day, the Delta County Sheriff's Office, on behalf of Defendant Delta County, filed the necessary records regarding Defendant Williamson's appointment as a Delta County Deputy, and attempted to process the records on the TCOLE website. However, TCOLE immediately rejected the appointment of Defendant Williamson as a Peace Officer because he did not possess a valid Peace Officer's license and did not possess the minimum standards for Peace Office licensure. Upon information and belief, Defendant Smith and the Delta County Sheriff's thus had actual knowledge that Defendant Williamson could not operate lawfully as a Delta County Sheriff's Deputy.

35.    Despite such actual knowledge, Defendant Smith allowed Defendant Williamson to operate continue to operate as a Deputy on behalf of Defendant Delta County beginning on October 2, 2019. As a result, Defendant Williamson unlawfully conducted traffic stops, issued citations, and made arrests during October 2019 and November 2019. Defendant Smith and Defendant Singleton personally approved the unlawful conduct of Defendant Williamson during this time.

**C.  Defendant Williamson's False Arrest of Mr. Wiley**

36.    On or around October 8, 2019, Mr. Wiley attended his son's peewee football practice in Delta County, Texas. During the practice, Mr. Wiley briefly left and drove to visit his mother at her home nearby.

37.    Mr. Wiley subsequently drove back to the practice after a short visit, and noticed that Defendant Williamson and another Delta County Deputy were parked in the parking lot outside the practice.

38.    As Mr. Wiley stepped out of his vehicle, Defendant Williamson immediately detained Mr. Wiley, and asked him to provide his identification. Defendant Williamson did not

**FIRST AMENDED COMPLAINT**

9

have lawful authority to detain Mr. Wiley for a Texas Transportation Code violation as he had no right or duty to conduct an arrest or enforce the code under Texas law.[2]

39.    Despite possessing no underlying lawful justification, Defendant Williamson conducted a custodial interrogation of Mr. Wiley and determined that he did not currently have his license.

40.    Defendant Williamson then placed Mr. Wiley under arrest for the traffic violation despite possessing no lawful authority to conduct the warrantless arrest.[3] As a result, Defendant Williamson did not have probable cause to arrest Mr. Wiley under Texas law.

41.    Following Defendant's false arrest, Mr. Wiley began praying aloud as Defendant Williamson placed handcuffs on his wrists. However, Mr. Wiley remained complaint with Defendant Williamson's commands.

42.    Defendant Williamson then forced Mr. Wiley into his Delta County Sheriff's Office vehicle while Defendant Williamson initiated a search of Mr. Wiley's car without probable cause or exigent justifying circumstances. During the search, Mr. Wiley's son learned that his father was under arrest. Mr. Wiley's son was only ten years old at the time. After the unlawful search, Defendant Williamson issued a sworn citation that charged Mr. Wiley with Disorderly Conduct and Driving While License Invalid, and stated that Defendant Williamson placed Mr. Wiley under arrest for a violation of the penal code.

---

[2] *See* TEX. TRANSP. CODE. § 543.001 (only a Peace Officer can arrest persons without a warrant who commit traffic violations); *see also id.* at § 701.002 (a person must have the same right and duty under the law as a deputy sheriff to arrest a person in order to enforce the TEX. TRANSP. CODE.); *id.* at § 521.025(b) (only a Peace Officer may stop and detain a person operating a motor vehicle).

[3] *See* TEX. TRANSP. CODE. § 543.001 (only a Peace Officer can arrest persons without a warrant who commit traffic violations); *see also id.* § 521.025(c) (driving without a license is a misdemeanor offense), TEX. CODE. CRIM. P. ART. 14 (only a Peace Officer may arrest, without a warrant, a misdemeanor offense).

**FIRST AMENDED COMPLAINT**

43. Defendant Williamson deliberately excluded that he did not possess an active Peace Officer license during the arrest, and thus excluded material information from the citation.

44. Defendant Williamson then took Mr. Wiley to the Delta County Jail ("the Jail") operated by the Delta County Sheriff's Office on behalf of Defendant Delta County.

45. Upon information and belief, Defendant Williamson then submitted a sworn probable cause affidavit that set out the facts supporting the arrest without a warrant, and Mr. Wiley's charges of Disorderly Conduct and Driving While License Invalid.

46. Upon information and belief, Defendant Williamson deliberately excluded that he did not possess an active Peace Officer license during the arrest, and thus excluded the material information that he did not have lawful authority and probable cause under Texas law to arrest Mr. Wiley for such offenses.

47. The following day, on or around October 9, 2019, Mr. Wiley appeared before Delta County Justice of the Peace Shannon McCulloch ("JP McCulloch") pursuant to TEX. CRIM. P. ART. 14.06. JP McCulloch then arraigned Mr. Wiley on the basis of Defendant Williamson's materially false affidavit.

48. Mr. Wiley was not aware that Defendant Williamson unlawfully arrested him. Mr. Wiley thus plead guilty to the offenses in order to be released from jail. At the time, JP McCulloch was also unaware that Defendant Williamson did not have a valid Peace Officer license, and imposed a fine of $590 as a criminal penalty.

49. Following the imposition of the fine, Mr. Wiley expected to be released from the Jail. However, Mr. Wiley was returned to the Jail because he was unable to pay the fine at the time. JP McCulloch thus ordered Mr. Wiley to "pay" the fine with eight days in the Jail and be released on October 16, 2019.

**FIRST AMENDED COMPLAINT**

**D. The denial of Mr. Wiley's necessary medication by Defendant Smith, on behalf of Defendant Delta County**

50.    Upon his return to the Jail, Mr. Wiley told the detention officers at the entrance of the Delta County Jail that he suffered from a mental health disability, schizophrenia. Mr. Wiley informed the detention officers that he needed his prescribed medication, (Zyprexa – an anti-psychosis medication) in order to control and treat his schizophrenia, and requested that the detention officers provide his needed medication.

51.    Despite his request, the detention officers denied Mr. Wiley his necessary medication. to keep his mental health disability under control. Mr. Wiley was then returned to his cell without any ability to treat his disability.

52.    Upon information and belief, Defendant Smith learned from the detention officers that Mr. Wiley required Zyprexa to control and treat his serious mental health condition.

53.    After gaining actual knowledge of Mr. Wiley's serious medical needs, Defendant Smith went to Mr. Wiley's cell rather than immediately authorize Mr. Wiley's necessary medical treatment.

54.    Upon information and belief, Defendant Smith went to Mr. Wiley to see if Mr. Wiley actually needed his necessary medication, despite Mr. Wiley's prescription. However, Mr. Wiley and Defendant Smith did not speak. As a result, upon information and belief, Defendant Smith deliberately instructed his detention officers at the Jail to withhold Mr. Wiley's necessary medication.

55.    Mr. Wiley was thus forced to remain at the Jail without his necessary medication for his mental health condition until his fines were "paid" and he was released on October 16, 2019.

**FIRST AMENDED COMPLAINT**

56.     During this time, Mr. Wiley's mental health deteriorated due to the denial of necessary mediation to treat his schizophrenia. As a result, Mr. Wiley began experiencing psychosis that dramatically altered his behavior at the Jail.

### E.  The Unlawful Institutionalization and Incarceration of Mr. Wiley

57.     On October 16, 2019, the Delta County Sheriff's Office refused to release Mr. Wiley from the Jail, despite the order from the JP's office. On October 18, 2019, JP McCulloch received notice that Mr. Wiley remained incarcerated at the Delta County Jail.

58.     On the same day, JP McCulloch immediately called Mr. Wiley to the courthouse. JP McCulloch verified that Mr. Wiley remained incarcerated at the Jail. JP McCulloch then ordered Mr. Wiley to be immediately released from the custody of the Delta County Sheriff's Office, and gave Mr. Wiley $185.00 in credit for his additional time served.

59.     Despite the order of JP McCulloch, the Delta County Sheriff's Office did not immediately release Mr. Wiley from custody. Instead, Mr. Wiley learned that Defendant Smith independently contacted a Texas District Judge in Paris, Texas and requested the immediate institutionalization of Mr. Wiley because of his psychosis at the Delta County Jail.

60.     Based on the personal request and recommendation of Defendant Sheriff Smith, the Paris, Texas District Court Judge signed an order for Mr. Wiley to be institutionalized at the Kerrville State Hospital in Kerrville, Texas.

61.     The following day, on or around October 20, 2019, Delta County Sheriff Deputies placed Mr. Wiley in metal restraints and brought him to the Kerrville State Hospital for an indefinite period of institutionalization caused by the denial of necessary medication.

### F.  Defendant Williamson's False Arrest and use of Excessive Force against Mr. Taylor

**FIRST AMENDED COMPLAINT**

62.     On or around October 19, 2019, Mr. Taylor was driving home, and pulled into his driveway.

63.     Without cause or warning, Defendant Williamson came out of nowhere and drove to the front of Mr. Taylor's home, got out of his car, and shouted, "Why did you run from me?"

64.     Mr. Taylor responded that he did not intend to run from any police officer, and that he had not seen Defendant Williamson or any police lights. At the time, Defendant Williamson did not have lawful authority to conduct a traffic stop of Mr. Taylor for a Texas Transportation Code violation as he had no right or duty to conduct an arrest or enforce the code under the law.[4]

65.     At this point, Defendant Williamson roughly grabbed Mr. Taylor by the arm and forced Mr. Taylor to turn around. Defendant Williamson then forcefully pushed Mr. Taylor's arm up behind his back. Defendant Williamson subsequently pushed Mr. Taylor face first on Plaintiff Taylor's vehicle. Defendant Williamson had no lawful authority to use such force against Mr. Taylor as Defendant Williamson had no probable cause for an arrest.

66.     Defendant Williamson then took out his metal handcuffs and ordered Plaintiff Taylor to provide his other hand. Before Plaintiff Taylor had time to respond, Defendant Williamson said, "want to make this painful?" Defendant Williamson then became increasingly angry at Plaintiff Taylor, and repeatedly yelled at Plaintiff Taylor to put his other hand behind his back while continuing to painfully force one arm up against his back.

67.     Without warning and justification, Defendant Williamson used excessive force and slammed Mr. Taylor on the ground causing Mr. Taylor's head to strike the ground. The intensity of the impact knocked Mr. Taylor out and caused a likely concussion. Defendant Williamson then placed Mr. Taylor in a chokehold while Mr. Taylor was still recovering from the impact. Defendant

---

[4] *See* Tex. Transp. Code. § 543.001; *see also id.* at § 701.002; *id.* at § 521.025(b).

Williamson had no reasonable basis for using such force as he had no lawful authority to conduct an arrest under Texas law.

68.    Defendant Williamson proceeded to place a knee on Mr. Taylor's back until another Delta County Sheriff's Deputy arrived and came over to aid Defendant Williamson in pinning Mr. Taylor to the ground.

69.    Defendant Williamson then placed handcuffs on Mr. Taylor's wrists and arrested Mr. Taylor for resisting arrest. Defendant Williamson had no lawful authority to arrest Mr. Miller for resisting arrest while Mr. Miller was unarmed, and thus had no probable cause for the arrest.[5]

70.    Defendant Williamson and the other Deputy subsequently brought Mr. Taylor beside Defendant Williamson's vehicle while Defendant Williamson conducted an unlawful search of Mr. Taylor's person.

71.    Following Defendant Williamson's false arrest of Mr. Taylor, the other Deputy placed Mr. Taylor into a Delta County Sheriff's Office vehicle. At this point, there was no evidence or indication that Defendant Williamson was intoxicated or impaired. Despite a lack of evidence and lawful authority, Defendant Williamson asserted he had probable cause to search Mr. Taylor's vehicle on the basis of a driving while intoxicated offense.

72.    Defendant Williamson proceeded to submit a probable cause affidavit that set out the facts that supported the arrest without a warrant, and Mr. Taylor's charges of Driving While Intoxicated, Resisting Arrest, and Public Intoxication. Upon information and belief, the probable cause affidavit did involve  a breathalyzer or sobriety test on the scene. Defendant Williamson further excluded the material information that he did not have lawful authority and probable cause under Texas Law to arrest Mr. Taylor for such offenses.

---

[5] *See* TEX. CODE. CRIM. P. ART. 14 (only a Peace Officer may arrest, without a warrant, a misdemeanor offense); *see also* TEX, PEN. CODE § 38.03 (resisting an arrest without a deadly weapon is a misdemeanor offense).

**FIRST AMENDED COMPLAINT**

73.    After his arrest, Mr. Taylor was taken to the Delta County Jail, and awaited arraignment. Following the arrest, Mr. Taylor appeared before JP McCulloch pursuant to TEX. CRIM. P. ART. 14.06. JP McCulloch then arraigned Mr. Taylor on the basis of Defendant Williamson's materially false affidavit.

## G. The Conspiracy to hide Defendant Delta County's Unlawful Employment of Defendant Williamson

74.    Upon information and belief, Defendant Smith and his department had actual knowledge that Defendant Williamson was unlawfully operating as a Delta County Sheriff's Deputy during the arrests of the named Plaintiffs.

75.    On October 24, 2019, following Mr. Taylor's unlawful arrest, Defendant Smith and his Office attempted to cover up the unlawful employment of Defendant Williamson. On this day, the Delta County Sheriff's Office again falsely certified on a notarized State of Texas document that it possessed the appropriate documentation to show that Defendant Williamson was licensed as a Peace Officer.

76.    Defendant Williamson also again falsely signed that he possessed the minimum standards for immediate reinstatement of his Peace Office License under penalty of perjury on a notarized State of Texas document.

77.    Later that day, the Delta County Sheriff's Office again attempted to process the records on the TCOLE website to falsely indicate that Defendant Williamson began his employment on October 24, 2019. However, TCOLE immediately rejected this attempt because Defendant Williamson still did not possess a valid Peace Officer's license and did not possess the minimum standards for Peace Officer licensure.

**FIRST AMENDED COMPLAINT**

78.    Upon information and belief, the Delta County Sheriff's Office, under the direction of Defendant Smith, did not remove Defendant Williamson from active duty despite further actual notice that Defendant Williamson did not possess a valid Peace Officer's license.

79.    On October 28, 2019, the Delta County Sheriff's Office and Defendant Williamson jointly submitted a new application to TCOLE to reactivate and reissue Defendant Williamson's invalid Peace Officer license. On the same day, Defendant Singleton aided in the cover up by submitting a signed letter to TCOLE that Defendant Williamson had recently completed his minimum requirements to be licensed.

80.    Around this time, Texas Department of Public Safety Trooper Archie Crittenden ("Trooper Crittenden") discovered that Defendant Williamson was operating without a valid Peace Officer's License. Trooper Crittenden is a veteran State Trooper with over twenty years of service with the Highway Patrol Division of the Texas Department of Public Safety.

81.    Trooper Crittenden was deeply disturbed that Defendant Williamson was unlawfully operating as a Delta County Sheriff's Deputy without a valid Peace Officer's License.

82.    On or about November 3, 2019, Trooper Crittenden went to speak with JP McCulloch shortly after he learned about the issues with Defendant Williamson.

83.    Trooper Crittenden informed JP McCulloch that Defendant Williamson had been unlawfully issuing citations and conducting unlawful arrests without a valid Peace Officer license. Trooper Crittenden specifically spoke about Mr. Taylor's arrest as an example of Defendant Williamson's actions.

84.    JP McCulloch informed Trooper Crittenden that she would confirm whether Defendant Williamson had a valid Peace Officer's License. JP McCulloch promised Trooper Crittenden that she would take immediate action to rectify the actions of Defendant Williamson.

**FIRST AMENDED COMPLAINT**

17

85.    The following day, on or around November 4, 2019, the JP's office directly contacted Defendant Smith. Defendant Sheriff Smith was directed to come to the JP's office in to specifically discuss Defendant Williamson.

86.    Later that day, Defendant Smith went to the JP's office and confirmed  that the Delta County Sheriff's Department was already aware that Defendant Williamson was unlawfully operating as a Delta County Deputy without a valid Peace Officer's License.

87.    JP McCulloch immediately told Defendant Smith that the JP's office would move to dismiss all of Defendant Williamson's unlawfully issued citations and arrests.

88.    But Defendant Smith did not want to dismiss Defendant Williamson's issued citations and arrest charges, and instead argued that all the fines should be paid to Defendant Delta County. To this end, Defendant Smith argued against informing the Plaintiffs and those similarly situated that they were unlawfully issued citations or charged with criminal offenses without probable cause.

89.    JP McCulloch then confronted Defendant Sheriff Smith about the unlawful arrest and criminal charges against Mr. Taylor. JP McCulloch told Defendant Sheriff Smith that Mr. Taylor needed to be released from jail immediately.

90.    Defendant Sheriff Smith refused to do so. Instead, Defendant Sheriff Smith told JP McCulloch that he would discuss Mr. Taylor's case with Defendant County Attorney Jay Garrett before taking any further action.

91.    On the same day,  Trooper Crittenden went to speak with Defendant Delta County Judge Jason Murray about Defendant Williamson.

92.    Trooper Crittenden informed Defendant Murray that Defendant Williamson had been unlawfully operating as a deputy without a valid Peace Officer's License, and requested

**FIRST AMENDED COMPLAINT**

18

Defendant Murray work with Defendant Garrett to appropriately resolve the issues surrounding Defendant Williamson.

93.    Trooper Crittenden specifically recommended that Defendant Murray dismiss all of Defendant Williamson's issued citations and criminal charges. Further, Trooper Crittenden informed Defendant Murray that Defendant Williamson's employment records and data would explicitly confirm Defendant Williamson did not possess an active Peace Officer's license while operating as a Delta County Deputy, and that the unlawfulness of Defendant Williamson's action would be readily apparent to anyone that checked the records.

94.    During this meeting, Defendant Murray promised Trooper Crittenden that he would work with Defendant Garrett to resolve the unconstitutional actions by Defendant Williamson and the unlawful employment of Defendant Williamson by the Delta County Sheriff's Office.

95.    Later the same day, JP McCulloch contacted Defendant Garrett, and confirmed that Defendant Garrett had spoken with Defendant Smith regarding his unlawful employment of Defendant Williamson and the unconstitutional arrest of Mr. Taylor.

96.    But during the call, Defendant Garrett refused to condemn the Delta County Sheriff's Office's unlawful employment of Defendant Williamson, and was deliberately indifferent towards Defendant Williamson's unlawful conduct. Defendant County Attorney Garrett further attempted to justify the false arrest of Mr. Taylor by comparing the arrest to a "citizen's arrest." However, Defendant Williamson had no authority to conduct a citizen's arrest of Mr. Taylor under Texas law.[6]

97.    Defendant Garrett then refused to take any action to release Mr. Taylor from jail, continued Mr. Taylor's unconstitutional detention. Defendant Garrett further informed JP

---

[6] *See* TEX. CODE. CRIM. P. ART. 14 (only a Peace Officer may arrest, without a warrant, a misdemeanor offense); *see also* TEX, PEN. CODE § 49.04 (driving while intoxicated is a misdemeanor offense).

**FIRST AMENDED COMPLAINT**

McCulloch that the Mr. Taylor's unlawful arrest was a violation of his probation. However, JP McCulloch correctly affirmed that the charges against Mr. Taylor were illegitimate, unlawful, and required Mr. Taylor's immediate release from the Jail.

98.     Defendant Garrett dismissed the concerns of JP McCulloch, and informed JP McCulloch that the Delta County Attorney's Office, on behalf of Defendant Delta County, was continuing the prosecution of Mr. Taylor's charges despite the absence of probable cause, and was going to recommend holding Mr. Taylor at the Jail until he was sent to a court-ordered in-patient Rehab Center.

99.     The following day, on or around November 5, 2019, the JP's office chose to independently dismiss Defendant Williamson's issues criminal charges or citations that were in the purview of the JP. During this time, a member of the JP's office personally called over sixty people who were similarly situated to the named Plaintiffs and informed them of their dismissals.

100.     The JP's office then notified Defendant Garrett and Defendant Smith of the independent decision to dismiss Defendant Williamson's issued criminal charges and citations.

101.     Upon information and belief, on or around November 5, 2019, Defendants Smith, Garrett, and Murray then met and conspired together to utilize whatever tools under their power to cover up Defendant Delta County's unlawful  employment of Defendant Williamson and Defendant Williamson's unconstitutional conduct.

102.     On or around the same day, Defendant Garrett, acting with deliberate indifference towards  Mr. Taylor, and in concert with Defendants Smith, and Murray, denied the release of Mr. Taylor. Defendant Garrett, acting in concert with the other Defendants, then sent Mr. Taylor to an in-patient rehabilitation center called the "Texas Dream Center," and did not inform Mr. Taylor that he had been falsely arrested and maliciously charged with crimes by Defendant Williamson.

**FIRST AMENDED COMPLAINT**

103.    During this time, Mr. Wiley remained institutionalized at the Kerrville State Hospital. Upon information and belief, Defendant Garrett, acting with deliberate indifference towards Mr. Wiley, and in concert with Defendants Smith and Murray, refused to contact the Kerrville State Hospital to release Mr. Wiley, and did not inform Mr. Wiley that he had been falsely arrested and maliciously charged with crimes by Defendant Williamson.

104.    Defendant Smith, acting in concert with Defendants Garrett, Murray, and Singleton, continued their abuse of the reporting procedures to TCOLE, submitted falsely certified official documentation that Defendant Williamson began operating as a Delta County Deputy on November 8, 2019.

105.    Specifically on November 8, 2019, the Delta County Sheriff's Office, under the direction of Defendant Smith and in concert with the other Defendants, conducted another official swearing in of Defendant Williamson as a Delta County Sheriff's Deputy.

106.    Defendant Williamson again certified his Oath of Office in the name of and by the authority of the State of Texas. Defendant Williamson and the Delta County Sheriff's Office, in concert with the other Defendants, certified that the initial Oath of Office date was November 8, 2019.

107.    The Delta County Sheriff's Office, under the direction of Defendant Smith and in concert with the other Defendants, subsequently submitted the Oath of Office and the other necessary paperwork to TCOLE, and falsely indicated that Defendant Williamson's service start date was on November 8, 2019.

108.    However, Delta County personnel records, Defendant Williamson's illegitimate arrest affidavits, and records from the JP's office demonstrate that Defendant Williamson was acting as a member of the Delta County Sheriff's Department in October 2019.

**FIRST AMENDED COMPLAINT**

109.    In addition, upon information and belief, Defendant Smith chose to place Defendant Williamson on desk duty in order to minimize the liability of Defendant Williamson's unconstitutional conduct, and the liability of Defendant Delta County's unlawful employment of Defendant Williamson.

### H.  The Impact on Plaintiffs and those similarly situated

110.    Mr. Wiley was forced to remain institutionalized at the Kerrville State Hospital from **October 20, 2019 until on or around December 18, 2020.** Mr. Wiley was only released from institutionalization because "he had met all the criteria" for release, rather than any action by the Defendants, despite the Defendants' actual knowledge that Mr. Wiley's incarceration was unlawful.

111.    Mr. Taylor was forced to remain at the "Texas Dream Center" **from November 5, 2019, until the last week of February 2020**. He only left the program because he discovered that the "Texas Dream Center" had no records of charges against him and that the charges were likely dropped.

112.    In the fall of 2020, Mr. Taylor received notice of an upcoming court date. Mr. Taylor discovered that despite what he was told, charges against him had not been dropped.

113.    On January 13, 2021, Mr. Taylor appeared on the docket for Delta County Criminal Court with his attorneys. Mr. Taylor was informed that there would be a continuance.

114.    Mr. Taylor, through his attorneys, discovered that the Defendants had hidden exculpatory evidence regarding Mr. Taylor's charges, specifically the false arrest by Defendant Williamson without a valid Peace Officer license. The discovery of the hidden evidence led to Mr. Taylor's charges finally being dropped in August 2021 without any finding of guilt, after Defendants Garrett and Murray were confronted with this evidence.

**FIRST AMENDED COMPLAINT**

115.    At the hearing to dismiss all charges, Defendant Garrett referenced the information that Defendant Williamson was unlicensed when he arrested Mr. Taylor and told him that he was "lucky to have such a good attorney, because <u>most lawyers probably wouldn't have found it</u>." His statement evimces that Defendant Garrett continued the prosecution of Mr. Taylor's charges despite actual notice that the charges were without merit.

116.    As a result of the false arrest and the actions of Defendants, Mr. Taylor lost his job. His family lost their main source of income, and his wife and children were forced to leave their family home. Mr. Taylor has specifically suffered immense emotional pain and suffering because of the Defendants' actions.

117.    As a result of the false arrest and the actions of Defendants, Mr. Wiley lost his access to disability benefits, and thus was unable to afford his mortgage payments. Mr. Wiley's was then forced to move back in with his mother because he had nowhere else to go. Mr. Wiley's two children were also deprived of financial support due to the lost income. Mr. Wiley has specifically suffered immense emotional pain and suffering as a result of Defendants' actions.

118.    Upon information and belief, Defendant Williamson, without an active Peace Officer's license, issued no fewer than forty-four sworn citations without any authority to conduct traffic stops or to enforce traffic laws. The citations included, but were not limited to, speeding tickets, failure to stop at a stop sign, defective headlights, driving while license is suspended, and failure to maintain financial responsibility. Defendant Williamson deliberately excluded from the issued citation affidavits the material information that he did not possess an active Peace Officer license.

**FIRST AMENDED COMPLAINT**

119.    Upon information and belief, at least $6,700 in citation fines and court fees were collected by Defendant Delta County from persons similarly situated to Plaintiff as a result of the unlawful citations issued by Defendant Williamson.

120.    Upon information and belief, Defendant Williamson wrongfully and unlawfully arrested and detained no fewer than two persons.

121.    Upon information and belief, Defendant Williamson was not disciplined, or re-trained before being allowed to continue to wield the power of his position

## RULE 23 CLASS ALLEGATIONS

122.    The named Plaintiffs seek to maintain this action as a class action pursuant to FED. R. CIV. P. 23(b)(3), on their own behalf as well as those who are similarly situated.

123.    The Class which the named Plaintiffs seek to define includes all persons cited, arrested, detained, or criminally charged by Defendant Williamson between October 1, 2019, and November 8, 2019 (the "Class"). Within the Class, Plaintiff further defines the following sub-classes:

- all persons issued citations by Defendant Williamson between October 1, 2019, and November 8, 2019, and who paid fines or court costs to Delta County ("Citation Subclass"); and

- all persons arrested or detained and issued criminal charges by Defendant Williamson between October 1, 2019, and November 8, 2019 ("Arrest Subclass").

124.    The proposed class of approximately forty-four individuals cited, arrested, detained, or criminally charged by Defendant Williamson while he did not possess a valid, active Peace Office license is so numerous that joinder is impracticable; there are questions of law or fact common to the class which predominate any individual questions of law or fact; claims of the named Plaintiffs are typical of the claims of the class; the named Plaintiffs will fairly and

**FIRST AMENDED COMPLAINT**

24

adequately protect the class as their representative; and a class action is superior to other methods of adjudication, as any lawsuit brought by any member of the proposed class would be substantially similar if not identical to a suit brought by any other member of the proposed class for the same constitutional violations and separate litigation would cause a risk of inconsistent results.

## CAUSES OF ACTION

### COUNT I
*Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(Unreasonable Search & Seizure as to the Class)**
**(As to Defendant Williamson)**

125.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

126.    The conduct alleged herein deprived Plaintiffs and those in the Class of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be from unreasonable search and seizures, and thus violated Plaintiffs' and those in the Class's clearly established constitutional rights.

127.    It is well settled that the protection of the Fourth Amendment extends to vehicle stops and the temporary detainment of a vehicle's occupants. *U.S. v. Reyes*, 963 F.3d 482, 487 (5th Cir. 2020) (quoting *U.S. v. Andres*, 703 F.3d 828, 832 (5th Cir. 2013). Therefore, the stopping of a vehicle and the detention of its occupants constitutes a seizure under the Fourth Amendment. *See U.S. v. Del Angel,* 2022 WL 1549479 *2 (5th Cir. 2022) (quoting *U.S. v. Brigham,* 382 F.3d. 500, 506 (5th Cir. 2004) (en banc)).

128.    A constitutional routine traffic stop operates as a *Terry* stop. *See id.* Under the law, such a traffic stop is unconstitutional if (i) the law enforcement officer's stop of the vehicle was unjustified at its inception and (ii) the law enforcement officer's subsequent actions were unreasonably related in scope to the circumstances that justified the stop. *See U.S. v. Davis*, 620

**FIRST AMENDED COMPLAINT**

Fed.Appx. 295, 298 (5th Cir. 2015) (citing *Brigham,* 382 F.3d at 506-07). Reasonability in this context requires a balancing test between the public interest and an individual's right to be free from arbitrary intrusions by government officials. *See Brigham*, 382 F.3d at 507.

129.    Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County Deputy with an active Peace Officer's License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[7]

130.    Without such lawful authority, Defendant Williamson conducted warrantless stops of Plaintiffs and those similarly situated on the initial basis of alleged routine traffic stops. Defendant Williamson then conducted searches of Plaintiffs and those in the Class and their vehicles as incident to an alleged traffic or criminal violation.

131.    Defendant Williamson's warrantless traffic seizures and searches were clearly unreasonable under well-established law because Defendant Williamson's conduct did not serve the public interest in the State of Texas. Defendant Williamson's conduct was clearly illegal under the laws and statutes of the State of Texas, and thus contravened the Texas legislature's established public interests regarding law enforcement routine traffic stops. Therefore, Defendant Williamson's conduct was clearly an unreasonable intrusion into Plaintiffs' and those in the Class's constitutionally protected interests as private citizens.

132.    As a result, Defendant Williamson's conduct, in willful concert with Defendant Delta County and under the supervision of Defendant Smith, violated Plaintiffs' and those in the

---

[7] *See* TEX. CRIM P. ART. 2.12 (Sheriff Deputies must hold a permanent peace officer license issued under Chapter 1701 of the TEXAS OCCUPATIONS CODE); *see also* TEX. OCCUPATIONS CODE § 1701.159 (Peace officers who hold inactive licenses may not serve as a peace officer unless the person reactivates the license).

**FIRST AMENDED COMPLAINT**

Class's clearly established constitutional right to be free from to be from unreasonable search and seizures during a traffic stop. *See Brigham*, 382 F.3d at 507.

133.    Defendant Williamson's unconstitutional searches and seizures led Plaintiffs and those in the Class to suffer bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

134.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Class's Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

135.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

**COUNT II**
*Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(Unlawful Arrest as to the Arrest Subclass)**
**(As to Defendant Williamson)**

136.    Plaintiffs, on behalf of themselves and those similarly situated in the Arrest Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein

137.    The conduct alleged herein deprived Plaintiffs and those in the Arrest Subclass of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be from an unlawful arrest, and thus violated Plaintiffs' and those in the Arrest Subclass's clearly established constitutional rights.

138.    During the arrests of Plaintiffs and those in the Arrest Subclass, Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County Deputy with an active Peace Officer's

**FIRST AMENDED COMPLAINT**

27

License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[8]

139.    An officer acts unconstitutionally under the Fourth Amendment when the officer makes warrantless arrests without authority provided under federal or state law to conduct the arrest. *See Calhoun v. Villa*, 761 Fed.Appx. 297, 300 (5th Cir. 2019) (quoting *U.S. v. Sealed Juvenile 1*, 255 F.3d 213, 216 (5th Cir. 2001)).

140.    Without lawful authority under Texas law and without probable cause, Defendant Williamson conducted warrantless arrests of the Plaintiffs and those in the Arrest subclass on alleged crimes. Nor did any federal statute or law provide Defendant Williamson with the authority to arrest Plaintiffs and those in the Arrest subclass without a warrant and or without probable cause.

141.    Defendant Williamson warrantless arrests were thus unconstitutional and deprived Plaintiffs and those in the Arrest Subclass of their clearly established Fourth Amendment right to be free from an unlawful arrest.

142.    Defendant Williamson's unconstitutional warrantless arrests without lawful authority led Plaintiffs and those in the Arrest Subclass to suffer bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

143.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Arrest Subclass's Fourth Amendment rights, entitling Plaintiffs and those in the Arrest Subclass to punitive damages.

144.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

---

[8] *See* TEX. CRIM P. ART. 2.12; *see also* TEX. OCCUPATIONS CODE § 1701.159.

**FIRST AMENDED COMPLAINT**

<u>**COUNT III**</u>
*Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(False Arrest as to the Class)**
**(As to Defendant Williamson)**

145.    Plaintiffs, on behalf of themselves and those similarly situated in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

146.    The conduct alleged herein deprived Plaintiffs and those in the Class of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from arrest without a good faith showing of probable cause, and thus violated Plaintiffs' and those in the Class's clearly established constitutional rights.

147.    It is well-established that an officer is liable for a false arrest in violation of the Fourth Amendment if the officer deliberately or recklessly provides, false, material information for use in an affidavit presented to an independent intermediary, or makes knowing and intentional omissions that result in a warrant being issued without probable cause. *See Anokwuru v. City of Houston,* 990 F.3d 956, 964 (5th Cir. 2021) (citing *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc)); *see also Franks v. Delaware,* 438 U.S. 154 (1978)).

148.    In this context, an officer is liable if the officer (i) helped prepare the affidavit, (ii) presented the affidavit to an independent intermediary, (iii) personally signed the affidavit, or (iv) swore to the validity of the facts included in the affidavit. *See Terwilliger v. Reyna,* 4 F.4th 270, 283 (5th Cir. 2021) (quoting *Melton,* 875 F.3d at 263).

149.    During the arrests, the institution of criminal charges, and the issuance of citations against Plaintiffs and those in the Class, Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County

**FIRST AMENDED COMPLAINT**

Deputy with an active Peace Officer's License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[9]

150.    Mr. Wiley and those in the Citation subclass were directed to appear before an independent magistrate in order to adjudicate the citations charged against them. Defendant Williamson's materially false citation affidavits were then presented to the independent magistrate and, upon information and belief, served as the main basis for the magistrate's findings.

151.    In addition, following the warrantless arrests of Plaintiffs and those in the Arrest Subclass, Defendant Williamson prepared and signed sworn probable cause affidavits that set out the facts for the warrantless arrests of Plaintiffs and those in the Arrest subclass, and charged them with misdemeanor offenses. In preparing the affidavits, Defendant Williamson deliberately excluded the materially relevant information that he did not possess an active Peace Officer's License. Defendant Williamson thus deliberately and falsely presented that he had lawful authority and/or probable cause under Texas Law to arrest Plaintiffs and those in the Arrest subclass.

152.    Plaintiffs and those in the Arrest subclass were subsequently placed before an independent magistrate. Defendant Williamson's materially false probable cause affidavits were then presented to the independent intermediary thereby providing the underlying basis for the arraignment of Plaintiffs and those in the Arrest Subclass.

153.    As a result, Defendant Williamson's material misstatements or material omissions in the probable cause affidavits and the citation affidavits deprived Plaintiffs and those in the Class of their clearly established Fourth Amendment right to be free from arrest without a good-faith showing of probable cause. *See Wilson v. Strooman*, 33 F.4th 202, 206 (5th Cir. 2022) (holding

---

[9] *See* TEX. CRIM P. ART. 2.12; *see also* TEX. OCCUPATIONS CODE § 1701.159.

**FIRST AMENDED COMPLAINT**

that an officer is liable if an affidavit supporting probable cause contains material misstatements or material omissions).

154.    Defendant Williamson's unconstitutional false arrests led Plaintiffs and those in the Class to suffer bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

155.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Class's Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

156.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT IV
### *Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
### **(Malicious Prosecution as to the Class)**
### **(As to Defendant Williamson)**

157.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

158.    The conduct alleged herein deprived Plaintiffs and those in the Class of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be from malicious prosecution, and thus violated Plaintiffs' and those in the Class's clearly established constitutional rights.

159.    The institution of criminal charges or citations violates the Fourth Amendment when (i) the motive in instituting the suit was without probable cause and for a purpose other than bringing a person to justice, and (ii) the legal charges or proceedings are terminated or ended without a conviction. See *Thompson v. Clark*, 141 S.Ct. 1332, 1338-41 (2022).

**FIRST AMENDED COMPLAINT**

160.    Defendant Williamson initiated criminal legal proceedings against Plaintiffs and those in the Class through materially false probable cause affidavits and/or materially false citation affidavits. As a result, Defendant Williamson's initiation of criminal legal proceedings against Plaintiffs and those in the Class was done without particularity and without a good-faith showing of probable cause. In addition, Defendant Williamson's initiation of criminal legal proceedings only served an illegal purpose under Texas law, and thus did not lawfully bring any member of the Class to justice.

161.    Plaintiffs and those in the Class were then subjected to either an unlawful pretrial detention at the start of the criminal legal process, or had to pay substantial fines, court costs, and legal fees. Further, Defendant Williamson's initiation of criminal legal proceedings served to harm Plaintiffs' and those in the Class's reputations and wronged their characters.

162.    Almost all the criminal proceedings unlawfully instituted by Defendant Williamson were subsequently dropped or terminated without convictions due to Defendant Williamson's lack of lawful authority to initiate such proceedings against Plaintiffs and those in the Class.

163.    Defendant Williamson's conduct therefore violated Plaintiffs' and those in the Class's clearly established right to be free from the initiation of criminal proceedings resulting in a seizure under the Fourth Amendment without probable cause. *See id*. at 1337.

164.    As a result of Defendant Williamson's malicious prosecution, Plaintiffs and those in the Class suffered bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

**FIRST AMENDED COMPLAINT**

165.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Class's Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

166.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

**COUNT V**
***Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983***
**(Unlawful Detention as to the Arrest Subclass)**
**(As to Defendant Williamson)**

167.    Plaintiffs, on behalf of themselves and those in the Arrest Subclass, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

168.    The conduct alleged herein deprived Plaintiffs and those in the Arrest Subclass of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from unlawful pre-trial detention, and thus violated Plaintiffs' and those in the Arrest Subclass's clearly established constitutional rights.

169.    It is clearly established that the Fourth Amendment protects against pretrial detention instituted pursuant to wrongful legal process or initiated on false evidence. *Manuel v. City of Joliet*, ―― U.S. ――, 137 S. Ct. 911, 917-19 (2017)). Liability arises in this context when a person is subjected to pretrial detention based upon a legal process that goes wrong, such as when a judge's probable-cause or criminal determination is predicated solely on an officer's false statements, or an arrest initiated without legal justification. *See id; see also Garcia v. San Antonio, Tex.*, 784 Fed.Appx. 229, 232 (5th Cir. 2019).

170.    During the arrests against Plaintiffs and those in the Arrest Subclass, Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully

**FIRST AMENDED COMPLAINT**

participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County Deputy with an active Peace Officer's License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[10]

171.    In addition, following the warrantless arrests of Plaintiffs and those in the Arrest Subclass, Defendant Williamson prepared and signed sworn probable cause affidavits that set out the facts for the warrantless arrests of Plaintiffs and those in the Arrest subclass, and charged them with misdemeanor offenses.

172.    In preparing the affidavits, Defendant Williamson deliberately excluded the materially relevant information that he did not possess an active Peace Officer's License. Defendant Williamson thus falsely presented that he had lawful authority and/or probable cause under Texas Law to arrest Plaintiffs and those in the Arrest subclass.

173.    Plaintiffs and those in the Arrest subclass were subsequently placed before an independent magistrate. Defendant Williamson's materially false probable cause affidavits were then presented to the independent intermediary.

174.    Upon information and belief, the materially false affidavits provided the sole basis for the arraignment of Plaintiffs and those in the Arrest Subclass, and their subsequent pretrial detention. As a result, Plaintiffs and those similarly situated in the Arrest subclass were subject to pretrial detention instituted pursuant to wrongful legal processes and materially false evidence.

175.    Defendant Williamson's conduct thus deprived Plaintiffs and those in the Arrest Subclass of their clearly established Fourth Amendment right to be free from unlawful pre-trial detention. *See Garcia,* 784 Fed.Appx. at 232.

---

[10] *See* TEX. CRIM P. ART. 2.12; *see also* TEX. OCCUPATIONS CODE § 1701.159.

**FIRST AMENDED COMPLAINT**

176.    Defendant Williamson's unconstitutional unlawful detention of Plaintiffs and those in the Class led them to suffer bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

177.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Class's Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

178.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT VI
### *Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
### (Excessive Force as to Patrick Taylor Individually)
### (As to Defendant Williamson)

179.    Plaintiff Patrick Taylor repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein

180.    The conduct alleged herein deprived Mr. Taylor of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be free from excessive use of force in violation of Mr. Taylor's clearly established constitutional rights, and was also objectively unreasonable under the circumstances of Mr. Taylor's unlawful arrest.

181.    Use of force violates the Fourth Amendment when an injury results (i) directly and only from the use of force that was clearly excessive to the need, and (ii) the force used was objectively unreasonable. *See Hale v. City of Biloxi, Mississippi*, 731 Fed. Appx. 259, 262 (5th Cir. 2018) (citing *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016) (per curiam)).

**FIRST AMENDED COMPLAINT**

182.    It is well established that the reasonableness of an excessive force inquiry is confined to the exact moment that resulted in the officer's use of force; and evaluated through (i) severity of the crime at issue, (ii) whether there was an immediate threat to the safety of the officers or others, and (iii) whether there is active resisting of arrest or attempting to evade arrest by flight. *See id.* (citing *Brown v. Lynch,* 524 Fed.Appx. 69, 80 (5th Cir. 2013) (per curiam)); *see also Harris v. Serpas,* 745 F.3d 767, 773 (5th Cir. 2014) (citing *Rockwell v. Brown,* 664 F.3d 985, 992-93 (5th Cir.2011)).

183.    Mr. Taylor suffered head injuries that were directly and only from Defendant Williamson's objectively unreasonable use of force. Further, at the moment of the use of force, Mr. Taylor did not present an immediate threat to Defendant Williamson and did not actively resist arrest. Nor was the use of force proportional to the severity of any alleged crime at issue as, ultimately, Mr. Taylor was found to have conducted no criminal acts.

184.    Defendant Williamson's conduct thus violated Mr. Taylor's clearly established constitutional right to be free from excessive force without a serious or significant threat or active resisting at the moment force was used. *See Darden v. City of Fort Worth,* 880 F.3d 722, 731 (5th Cir.2018) ("We have previously suggested that a constitutional violation occurs when an officer tases, strikes, or violently slams an arrestee who is not actively resisting arrest.").

185.    As a result of Defendant Williamson's use of excessive force, Mr. Taylor suffered a significant head injury, and emotional distress.

186.    Defendant Williamson further acted with evil motive or intent and/or reckless and callous indifference to Mr. Taylor's Fourth Amendment rights, entitling Mr. Taylor to punitive damages.

187.    Plaintiff Patrick Taylor's requests for relief are set forth below.

**FIRST AMENDED COMPLAINT**

<u>COUNT VII</u>
*Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(Denial of Basic Human Needs as to Titus Wiley Individually)**
**(As to Defendants Smith and Delta County)**

188.    Plaintiff Titus Wiley repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

189.    The conduct alleged herein deprived Mr. Wiley of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Eighth Amendment right to basic human needs such as medical care.

190.    Under Texas law, Defendant Smith was the final policymaker for Defendant Delta County in the area of County Jail Policies. *See* TEX. LOC. GOV'T CODE ANN. § 351.041, § 351.042.

191.    It is well established that a single unconstitutional action by a final policymaker establishes municipal liability as the single action represents official policy for a municipality. *See Bolton v. City of Dallas, Tex.*, 541 F.3d 545, 548 (5th Cir. 2008) (citing *Woodard v. Andrus*, 419 F.3d 348, 352 (5th Cir.2005). Therefore, Defendant Delta County may be liable for any of Defendant Smith's unconstitutional actions or decisions.

192.    Defendant Smith, on behalf of Defendant Delta County, through his episodic act or omission, deliberately denied Mr. Wiley his mental health medication to treat his serious mental health condition of schizophrenia, and thereby evinced a wanton disregard for Mr. Wiley's serious medical needs that violated Mr. Wiley's clearly established constitutional rights.

193.    In the context of medical care, a prison official is liable and violates the Eighth Amendment when the official acts with deliberate indifference to a prisoner's serious medical needs. *See Domino v. Tes. Dept. of Crim. Justice*, 239 F.3d 752, 754 (5th Cir. 2001) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)). A serious medical need involves psychological or

**FIRST AMENDED COMPLAINT**

psychiatric health issues. *See id.* (quoting *Partridge v. Two Unknown Police Officers of the City of Houston*, 791 F.2d 1182, 1187 (5th Cir.1986)).

194.    Officials act with deliberate indifference to serious medical needs when (i) the officials are aware of underlying facts indicating a substantial risk of serious harm exists and (ii) the officials must also draw the inference between the facts and the risk of serious harm. *See Baughman v. Hickman*, 935 F.3d 302, 307 (5th Cir. 2019) (citing *Williams v. Hampton*, 797 F.3d 276, 281 (5th Cir. 2015)).

195.    Deliberate indifference to a serious medical need can be established through refusal to treat a prisoner's medical needs, ignoring medical complaints, intentionally incorrect medical treatment, or any similar conduct that would clearly evince a wanton disregard for any medical needs. *See Perniciaro v. Lea*, 901 F.3d 241, 258 (5th Cir. 2018)). Further, the denial of recommended medical or previously prescribed treatment is often sufficient to establish deliberate indifference. *See Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)).

196.    Upon information and belief, Defendant Smith had actual knowledge that Mr. Wiley was diagnosed with the serious mental health condition of schizophrenia. Defendant Smith also had actual knowledge that Mr. Wiley treated and controlled his serious mental health condition with prescribed Zyprexa (an anti-psychosis medication), and that the medication was necessary to avoid Mr. Wiley suffering the serious debilitating effects of his condition. As a result, upon information and belief, Defendant Smith had actual knowledge of the substantial harms associated with denying Mr. Wiley his necessary medication.

197.    Despite Defendant Smith's actual awareness of such harms and substantial risks, Defendant Smith, upon information and belief, deliberately instructed his officers at the jail to deny Mr. Wiley his necessary and prescribed medication.

**FIRST AMENDED COMPLAINT**

198.     Defendant Smith's unconstitutional and deliberate decision to deny Mr. Wiley necessary medication to treat his serious health condition, as an official policy of Defendant Delta County, thus deprived Mr. Wiley of his Eighth Amendment right to the basic human need of medical care as a prisoner and was the moving force behind Mr. Wiley's extreme and debilitating psychosis while at the Delta County Jail.

199.     Plaintiff Titus Wiley's requests for relief are set forth below.

**COUNT VIII**
***Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983***
**(Unlawful Official Hiring Policies as to the Class)**
**(As to Defendants Smith and Delta County)**

200.     Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

201.     The conduct alleged herein deprived Plaintiffs and those in the Class of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment rights to be free from malicious prosecution, unreasonable search and seizure, unlawful arrest, false arrest, unlawful detention, and excessive force.

202.     Under Texas law, Defendant Smith was the final policymaker for Defendant Delta for official hiring policies towards Sheriff's Deputies. *See Brady v. Fort Bend Cnty.,* 145 F.3d 691, 701 (5th Cir. 1998) (holding that a Texas Sheriff's Office was a Texas County's final policymaking authority in filling deputy positions and positions in the Sheriff's Department).

203.     It is well established that a single unconstitutional action by a final policymaker establishes municipal liability as the single action represents the official policy for a municipality. *See Bolton,* 541 F.3d at 548 (citing *Woodard,* 419 F.3d at 352). Therefore, Defendant Delta County may be liable for any of Defendant Smith's unlawful hiring decisions or actions.

**FIRST AMENDED COMPLAINT**

204.    Municipal liability for an employees' acts caused by an inadequate or unlawful official hiring policy is established through (i) inadequate hiring policies or decisions by the final policymaker; (ii) deliberate indifference by the final policymaker in adopting or making the hiring decisions or policies; and (iii) the inadequate hiring decisions or policies directly caused the plaintiff's injuries. *See Bittakis v. City of El Paso,* 480 F. Supp.2d 895, 917 (W.D. Tex. 2007) (citing *City of Canton*, 489 U.S. 378, 391–92(1989); *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir.1992)).

205.    Deliberate indifference in this context is established if the deprivation of constitutional rights was the plainly obvious consequence of hiring decisions or policies. *See Livezey v. City of Malakoff*, 667 Fed.Appx. 274, 277 (5th Cir. 2016) (citing *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 415 (1997)).

206.    Defendant Smith, as the final policymaker for Defendant Delta County for the hiring of Delta County Sheriff's Deputies, inadequately chose to continue the hiring of Defendant Williamson despite acquiring actual notice that:

> (i)    Defendant Williamson did not possess an active, valid Peace Officer License;
>
> (ii)    Defendant Williamson did not possess the minimum requirements to be a Peace Officer under Texas law; and
>
> (iii)    Defendant Williamson had a history of unconstitutional conduct.

**FIRST AMENDED COMPLAINT**

207.    Defendant Smith thus was deliberately indifferent to the plainly obvious consequence that if Defendant Williamson was employed as a Delta County Sheriff's Deputy then Defendant Williamson would deprive individuals of their rights under the Fourth Amendment because Defendant Williamson would unlawfully:

        (i)    Operate without an active, valid Peace Officer's license;

        (ii)    Operate without the legal minimum of training and qualifications; and

        (iii)    Continue a history of unconstitutional conduct committed during arrests.

208.    As a direct result of Defendant Smith's inadequate decision to continue Defendant Williamson's hiring and employment, Defendant Williamson was allowed to unlawfully operate as a Delta County Deputy and thus was able to deprive Plaintiffs' and those in the Class's Fourth Amendment rights to be free from malicious prosecution, unreasonable search and seizure, unlawful arrest, false arrest, unlawful detention, and excessive force.

209.    Therefore, Defendant Smith's single unconstitutional decision to hire and employ Defendant Williamson, as official policy for Defendant Delta County, was the moving force behind the deprivation of Plaintiffs' and those in the Class's constitutional rights, and thus their subsequent harms.

210.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT IX
### *Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(False Imprisonment as to the Arrest Subclass)**
**(As to Defendants Smith, Delta County. Garrett, and Murray)**

211.    Plaintiffs, on behalf of themselves and those in the Arrest Subclass, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

**FIRST AMENDED COMPLAINT**

212.    The conduct alleged herein deprived Plaintiffs and those in the Arrest Subclass of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourteenth Amendment due process rights to be free from false imprisonment, and thus violated clearly established rights.

213.    Under Texas law, Defendant Smith was the final policymaker for Defendant Delta in the area of County Jail Policies. *See* TEX. LOC. GOV'T CODE ANN. § 351.041, § 351.042.

214.    It is well established that a single unconstitutional action by a final policymaker establishes municipal liability as the single action represents the official policy for a municipality. *See Bolton,* 541 F.3d at 548 (citing *Woodard,* 419 F.3d at 352). Therefore, Defendant Delta County may be liable for any of Defendant Smith's unconstitutional decisions related to County Jail policies and decisions.

215.    Liability for false imprisonment, as a Fourteenth Amendment due process clause violation, is established through detention without the institution of valid legal processes. *See Winfrey v. Rogers*, 901 F.3d 483, 492 (5th Cir. 2018) (citing *Wallace v. Kato,* 549 U.S. 384, 387 (2007)). On this basis, the 5th Circuit has recognized due process clause violations for continued incarceration of individuals by government officials (i) without an initial appearance, (ii) after charges are dropped, (iii) beyond the terms of a court-ordered sentence, or (iv) in the face of exculpatory evidence. *See Terry v. Hubert*, 609 F.3d 757, 763 (5th Cir. 2010) (collecting cases).

216.    During the arrests against Plaintiffs and those in the Arrest Subclass, Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County Deputy with an active Peace Officer's

License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[11]

217.    As a result of Defendant Williamson's lack of lawful authority, Plaintiffs and those in the Arrest Subclass were subjected to incarceration instituted pursuant to wrongful legal processes and materially false evidence.

218.    During the unlawful detention of Plaintiffs and those in the Arrest Subclass, Defendants Smith, Garrett, and Murray became collectively aware that Plaintiffs and those in the Arrest Subclass were incarcerated despite the presence of significant exculpatory evidence.

219.    In addition, JP McCulloch ordered Defendants Smith, Garrett, and Murray to release Plaintiffs and those in the Arrest Subclass from incarceration after she learned about Defendant Williamson's unlawful conduct.

220.    Despite the presence of significant exculpatory evidence and the court orders by JP McCulloch, Defendants Smith, Garrett, and Murray jointly and collectively refused to release Plaintiffs and those in the Arrest Subclass from incarceration.

221.    Defendant Smith had also been ordered through the terms of Plaintiff Wiley's court-ordered sentence to release Mr. Wiley from incarceration on October 16, 2019. However, Defendant Smith, as final policymaker for Defendant Delta County, refused to release Mr. Wiley from incarceration on the legal date, and instead continued Mr. Wiley's incarceration through an unlawful transfer to the Kerrville State Hospital.

222.    As a result of the above conduct, Defendants Smith, Garrett, and Murray deprived Plaintiffs and those in the Arrest subclass of their clearly established Fourteenth Amendment due process rights to be from false imprisonment.

---

[11] *SEE* TEX. CRIM P. ART. 2.12; *see also* TEX. OCCUPATIONS CODE § 1701.159.

**FIRST AMENDED COMPLAINT**

223.    Defendants Smith's, Garrett's, and Murray's unconstitutional conduct thus led Plaintiffs and those in the Arrest Subclass to suffer bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above, and was a moving force behind their further constitutional injuries.

224.    Defendants Smith, Garrett, and Murray also acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Arrest Class's Fourteenth Amendment rights, entitling Plaintiffs and those in the Arrest Subclass to punitive damages.

225.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT X
### *Civil Action For Deprivation of Rights, 42 U.S.C.A. § 1983*
**(Malicious Prosecution as to the Class)**
**(As to Defendants Smith, Delta County, Garrett, and Murray)**

226.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

227.    The conduct alleged herein deprived Plaintiffs and those in the Class of rights and privileges secured and protected by the United States Constitution and the laws of the United States, namely the Fourth Amendment right to be from malicious prosecution, and thus violated Plaintiffs' and those in the Class's clearly established constitutional rights.

228.    The institution of criminal charges or citations violates the Fourth Amendment when (i) the motive in instituting the suit was without probable cause and for a purpose other than bringing a person to justice, and (ii) the legal charges or proceedings are terminated or ended without a conviction. See *Thompson*, 141 S.Ct. at 1338-41.

**FIRST AMENDED COMPLAINT**

229.    During the institution of criminal charges and/or citations against Plaintiffs and those in the Class, Defendant Williamson operated as a contracted employee of Defendant Delta County, and willfully participated in concert with Defendant Delta County and the other government Defendants to illegally and falsely represent that he was a Delta County Deputy with an active Peace Officer's License. As a result, Defendant Williamson did not possess lawful authority to act as a law enforcement officer under Texas law.[12]

230.    As a result of Defendant Williamson's lack of lawful authority and probable cause, Plaintiffs and those in the Arrest Subclass were subjected to the institution of criminal legal charges and/or citations pursuant to wrongful legal processes and materially false evidence.

231.    During this time, Defendants Smith, Garrett, and Murray became collectively aware that Defendant Williamson unlawfully and maliciously initiated criminal legal charges and/or citations against Plaintiffs and those in the Class.

232.    JP McCulloch further ordered Defendants Smith, Garrett, and Murray to dismiss all criminal charges and/or citations wrongfully instituted against Plaintiffs and those in the Class after she learned of Defendant Williamson's unlawful conduct.

233.    Despite the lack of lawful authority and probable cause, Defendants Smith, Garrett, and Murray jointly, collectively, and maliciously refused to dismiss any of the outstanding criminal charges and/or citations within their power.

234.    In addition, Defendants Smith, Garrett, and Murray conduct only served an illegal purpose under Texas law, and thus did not lawfully bring any member of the Class to justice.

---

[12]

See TEX. CRIM P. ART. 2.12; see also TEX. OCCUPATIONS CODE § 1701.159.

**FIRST AMENDED COMPLAINT**

235.    Plaintiffs and those in the Class were then subjected to continued unlawful pretrial detention; had to pay substantial fines, court costs, and legal fees; or further incarceration. Defendants Smith, Garrett, and Murray continuation of criminal legal proceedings also served to harm Plaintiffs' and those in the Class's reputations and wronged their characters.

236.    Almost all of the criminal proceedings unlawfully maintained and continued by Defendants Smith, Garrett, and Murray were subsequently dropped or terminated without convictions due to Defendant Williamson's lack of lawful authority to initiate such proceedings against Plaintiffs and those in the Class.

237.    Defendants Smith's, Garrett's, and Murray's conduct therefore violated Plaintiffs' and those in the Class's clearly established right to be free from criminal proceedings resulting in a continued seizure under the Fourth Amendment without probable cause. *See id*. at 1337.

238.    In addition, Defendants Smith, Garrett, and Murray, as the final policymakers in this area for Defendant Delta County, established Defendant Delta County's official policy towards Plaintiffs' and those in the Class's criminal proceedings.

239.    As a result of Defendants Smith's, Garrett's, and Murray's unconstitutional malicious prosecution, Plaintiffs and those in the Class suffered bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, and as set forth more fully above; and was the moving force their constitutional injuries.

240.    Defendants Smith, Garrett, and Murray further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' and those in the Class's Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

**FIRST AMENDED COMPLAINT**

241.     Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT XI
### *Civil Action for Deprivation of Rights, 42 U.S.C.A. § 1983*
### **(Civil Conspiracy as to the Class)**
### **(As to All Defendants except Defendant Williamson)**

242.     Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

243.     Plaintiffs and those in the Class aver that Defendants Smith, Garrett, Murray, and Singleton (collectively "Conspirators") and their subordinates colluded and/or conspired to hide

> (i)     The unlawful hiring and employment of Defendant Williamson without an active Peace Officer's license or necessary qualifications; and

> (ii)     Defendant Williamson's violations of the Fourth Amendment right to be free from malicious prosecution, unreasonable search and seizure, unlawful arrest, false arrest, unlawful detention, and excessive force.

244.     In the collusion and/or conspiracy, each of the Conspirators and their subordinates used their authority in their positions to cover up the unlawful and unconstitutional actions of Defendant Williamson, and each of the Conspirators were thus aware of the existence of the conspiracy as they communicated between themselves to advance the conspiracy.

245.     The Conspirators then colluded to perform illegal acts with the intention of violating Plaintiffs' and those in the Class's constitutional rights. The Conspirators specifically acted in furtherance of the conspiracy by:

> (i)     Altering employment records sent to TCOLE;

> (ii)     Falsifying official government documentation and records;

**FIRST AMENDED COMPLAINT**

(iii)   Dismissing the illegality and seriousness of Defendant Williamson's unlawful conduct;

(iv)   Maintaining and continuing the malicious prosecution of Defendant Williamson's issued citations;

(v)   Maintaining and continuing the malicious prosecution of Defendant Williamson's issued criminal;

(vi)   Promoting Plaintiffs' and those in the Class's payment of criminal fines and court fees;

(vii)   Reassigning Defendant Williamson to desk duty; and

(viii)   Maintaining and Continuing Plaintiffs' and those in the Class's false imprisonment.

246.   As a result of the collusion and/or conspiracy, Plaintiffs and those in the Class were deprived of their clearly established rights under the Constitution.

247.   Plaintiffs and those in the Class further aver that an agreement between the Conspirators to cover up the unlawful actions of Defendant Williamson can be shown by:

(i)   Defendant Smith's, on behalf of Defendant Delta County, official decision to hire and employ Defendant Williamson, and allow him to operate unlawfully as a Delta County Deputy;

(ii)   Defendant Smith's and Defendant Singleton's deliberate indifference and failure to supervise Defendant Williamson's unlawful conduct;

(iii)   On or around November 4, 2019, Defendant Smith's promise to speak with Defendant Garrett about Defendant Williamson's unlawful conduct;

**FIRST AMENDED COMPLAINT**

(iv)    On or around November 4, 2019, Defendant Garrett's confirmation that he spoke with Defendant Smith about Defendant Williamson's unlawful conduct;

(v)    On or around November 4, 2019, Defendant Garrett's and Defendant Smith's, after conferring together, refusal to take any action to rectify or resolve the issues surrounding Defendant Williamson's unlawful conduct, including the continued unlawful detention of Mr. Taylor;

(vi)    On or around November 4, 2019, Defendant Garrett's and Defendant Smith's, after conferring together, independent endorsement that Plaintiffs and those in the Class continue payment of fees and penalties caused by Defendant Williamson's unlawful conduct;

(vii)    On or around November 4, 2019, Defendant Murray's promise to speak with Defendant Garrett about Defendant Williamson's unlawful conduct;

(viii)    On or around November 5, 2019, Defendant Murray's deliberate indifference towards Defendant Williamson's unlawful conduct, and refusal to rectify or resolve the issues surrounding Defendant Williamson;

(ix)    On or around November 5, 2019, Defendant Garrett's, on behalf of his office, continuance of Mr. Taylor's false imprisonment through sending Mr. Taylor to in-patient rehabilitation at the "Texas Dream Center;"

(x)    Defendant Smith's and Defendant Singleton's alteration of Defendant Williamson's official employment records provided to TCOLE;

(xi)    Defendant Smith's and Defendant Singleton's falsification of official government documents by conducting another Oath of Office for Defendant

**FIRST AMENDED COMPLAINT**

Williamson's on November 8, 2019, despite previously conducting Defendant Williamson's Oath of Office on October 2, 2019;

(xii)    Defendant Smith's, on behalf of Defendant Delta County, decision to reassign Defendant Williamson to desk duty; and

(xiii)    Defendant Garrett's refusal to provide exculpatory evidence related to Defendant Williamson's unlawful conduct.

248.    On information and belief, the Conspirators met and discussed the unlawful actions of Defendant Williamson on or around November 5, 2019, and agreed they would abuse the powers of their offices to hide that Defendant Williamson had been unlawfully operating without an active Peace Officer's License, and to actively conceal the serious consequences of Defendant Williamson's conduct and Defendant Smith's unlawful employment policy.

249.    The Conspirators made this/these agreements using their official positions and power under the color of law, and each took concrete steps to violate Plaintiffs' and those in the Class's clearly established constitutional rights, and were a moving force behind their constitutional deprivations.

250.    As a direct and proximate result of the Conspirators' conspiracy, Plaintiffs and those in the Class suffered bodily injury, pain, suffering, mental distress, anguish, humiliation, loss of liberty, loss of enjoyment, and loss of income, humiliation, unlawful incarceration, denial of medical treatment, and as set forth more fully above.

251.    Each individual Conspirator, on behalf of themselves and as final policymakers of Defendant Delta County, are therefore liable for the deprivation of Plaintiffs' and those in the Class's constitutional rights.

**FIRST AMENDED COMPLAINT**

252.    The Conspirators further acted with evil motive or intent and/or reckless and callous indifference to Plaintiffs' Fourth Amendment rights, entitling Plaintiffs and those in the Class to punitive damages.

253.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

<u>**COUNT XII**</u>
***Abuse of Process***
**(As to the Class)**
**(As to All Defendants)**

254.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

255.    Defendants conspired together to make an illegal, improper, or perverted use of process, by filing false notarized government documents, altering employment records sent to TCOLE, and by conducting an additional Oath of Office for Defendant Williamson on November 8, 2019.

256.    Defendants' illegal, improper, or perverted use of these processes was neither warranted nor authorized.

257.    Defendants had an ulterior motive or purpose in exercising such illegal, improper, or perverted use of the processes, the cover up of Defendant Williamson operating without an active Peace Officer's License and the incarceration of Plaintiffs and other similarly situated individuals.

258.    The result of the Defendants' illegal, improper, or perverted use of the processes proximately caused Plaintiff and other similarly situated individuals in the Class to suffer significant damages.

**FIRST AMENDED COMPLAINT**

259.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT XIII
### *Malicious Prosecution*
### (As to the Class)
### (As to All Defendants Except Defendant Williamson)

260.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

261.    A criminal prosecution was commenced against Plaintiffs and those in the Class after their unlawfully arrests by Defendant Williamson.

262.    Defendant Garrett, in concert with the other Defendants, acted to procure and continue the prosecution against Plaintiffs and those in the Class following his awareness of Defendant Williamson's unlawful conduct.

263.    The vast majority of the prosecutions were terminated in Plaintiffs' and those in the Class's favor when the charges were subsequently dropped.

264.    Plaintiffs' and those in the Class with dropped charges were thus found not guilty of the charges.

265.    Defendants lacked probable cause to procure and continue the prosecution after discovering that the Defendant Williamson had no lawful authority to arrest Plaintiffs and those in the Class.

266.    Defendants acted with malice to procure and continue the prosecution by refusing to dismiss the charges against Plaintiffs and those in the Class, pursuing unlawful prosecutions, and denying the production of exculpatory information.

267.    The result of the Defendants' malice proximately caused Plaintiffs and those in the Class to suffer significant damages.

**FIRST AMENDED COMPLAINT**

268.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

## COUNT XIV
### *Fraud*
**(As to the Class)**
**(As to All Defendants Except Defendant Williamson)**

269.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

270.    Defendants acted in concert to materially represent that Defendant Williamson had, at all times, an active Peace Officer's License during his employment with the Delta County Sheriff's Office.

271.    Defendants' material representation about Defendant Williamson's employment was false.

272.    Defendants had actual knowledge that their material representation was false when the material representation were made.

273.    Plaintiffs and those in the Class detrimentally relied upon the Defendants' misrepresentation through unlawful incarceration, paying court fees, paying citation fines, and other such measures.

274.    The result of the Defendants' misrepresentation proximately caused Plaintiffs and other similarly situated individuals in the Class to suffer significant damages.

275.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

**FIRST AMENDED COMPLAINT**

**COUNT XV**
***Intentional Infliction of Emotional Distress***
**(As to the Class)**
**(As to All Defendants)**

276.    Plaintiffs, on behalf of themselves and those in the Class, repeat and re-allege the allegations contained in the paragraphs above, as if fully set forth herein.

277.    Defendants' conduct was intentional or reckless, extreme, and outrageous.

278.    As a result of Defendants' actions, Plaintiffs and those in the Class experienced severe emotional distress.

279.    Plaintiffs' requests for relief, on behalf of themselves and those similarly situated, are set forth below.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and those in the Class, pray for the following relief:

280.    That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of the Plaintiffs and those similarly situated under U.S. Const. Amend. IV and XIV, 42 U.S.C.A. § 1983;

281.    All damages which Plaintiffs and other similarly situated individuals have sustained as a result of Defendants' conduct;

282.    That Plaintiffs and other similarly situated individuals be awarded pre and post judgment interest;

283.    Exemplary and punitive damages in an amount commensurate with Defendants' ability and so as to deter future malicious, oppressive, and/or malicious conduct;

284.    Pursuant to 42 U.S.C.A. § 1988, Plaintiffs request that this court award Plaintiffs and other similarly situated individuals in the Class reasonable and necessary attorneys' fees and

**FIRST AMENDED COMPLAINT**

expenses which Plaintiffs have incurred and will continue to incur during all trial and appellate court proceedings.

285.    That the Court retain jurisdiction over Defendants until such time as it is satisfied that Defendants have remedied the practices complained of and are determined to be in full compliance with the law;

286.    Granting Plaintiffs and other similarly situated individuals other and further relief as this Court finds necessary and proper.

287.    Plaintiffs further demand that they and other similarly situated individuals be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

## **JURY TRIAL DEMAND**

288.    Plaintiff and those similarly situated request a jury trial on all matters raised in this Complaint.

Dated:        July 15, 2022                    Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
David W. Henderson
Texas State Bar No. 24032292
dhenderson@equalrights.law
**ELLWANGER LAW LLLP**
400 S. Zang Blvd. Ste. 600
Dallas, TX 75208
Telephone: (469) 998-6775
Facsimile: (469) 998-6775

***COUNSEL FOR PLAINTIFFS***

**FIRST AMENDED COMPLAINT**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 15, 2022 a true and correct copy of the foregoing document was served via electronic email to all counsel of record.

<u>*/s/ Jay D. Ellwanger*</u>
Jay D. Ellwanger

**FIRST AMENDED COMPLAINT**